UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

ONEIDA SEVEN GENERATIONS
CORPORATION and GREEN BAY
RENEWABLE ENERGY, LLC,

        Plaintiffs,

    v.                                         Case No. 1:16-cv-01700

CITY OF GREEN BAY,

        Defendant.

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

Defendant City of Green Bay (the "City"), by its attorneys GUNTA LAW OFFICES, S.C., respectfully submits this memorandum in support of its motion to dismiss the Complaint of Plaintiffs Oneida Seven Generations Corporation ("OSGC") and its wholly-owned subsidiary Green Bay Renewable Energy, LLC ("GBRE"), pursuant to Federal Rules of Civil Procedure 9(a), 12(b)(1), 12(b)(2), 12(b)(6), and 17(b)(2).

## **INTRODUCTION**

OSGC complains that it was deprived due process under the Fourteenth Amendment when the City rescinded OSGC's conditional use permit ("CUP") to build a solid waste incinerator. The decision to rescind the CUP has been processed to death. It was reviewed by the City under Wis. Stat. § 68.06, and the Wisconsin Circuit Court, the Wisconsin Court of Appeals, and the Wisconsin Supreme Court by certiorari. Attached to the Complaint as Exhibits A and B are the Wisconsin Court of Appeals and Wisconsin Supreme Court decisions and orders reversing the rescission and affirming the reversal, just as OSGC requested.

Rather than enforce the state court judgment as Wisconsin Statutes §§ 815.01, 815.02, and 785.03 entitle OSGC to do, OSGC and GBRE now seek federal review of the same decision along with damages. The Complaint fails to allege that the available state court remedies are inadequate and fails to show that OSGC fully availed itself of those remedies. The Complaint also fails to identify a constitutionally protected property interest and fails to state a claim as a matter of law that the City's decision to rescind the CUP was arbitrary in the constitutional sense. For these independent reasons, the Complaint fails to show a violation of substantive or procedural due process cognizable under § 1983, and should be dismissed pursuant to Rule 12(b)(6).

The Complaint also fails to allege any facts pertaining to GBRE whatsoever beyond identifying itself as a Delaware corporation and OSGC's subsidiary. GBRE has failed to state a claim and should be dismissed pursuant to Rule 12(b)(6), and has failed to allege an injury in fact and should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

In the alternative, the Complaint should be dismissed under Rules 9(a), 12(b)(2), and 17(b)(2) for lack of corporate capacity to sue. OSGC is a tribal corporation chartered under the laws of the Oneida Nation. In 2013, the Oneida General Tribal Council—the governing body of Oneida Nation—voted to dissolve OSGC. The subordinate entity Oneida Business Committee has not dissolved OSGC. Instead, the Business Committee has stripped OSGC of its powers and limited its purpose to strictly "commercial leasing." Then, shortly before OSGC filed this Complaint and in the face of tribal pressure to dissolve OSGC, the General Tribal Council considered a motion specifically designed to allow OSGC to pursue this lawsuit. After debate and consideration, however, the General Tribal Council voted to table that motion and never took any additional action. As such, the filing and prosecution of the present suit has never been authorized or approved.

Under Rule 17(b)(2), corporate capacity to sue is determined by the law under which a corporation was organized. Under Oneida Nation law, OSGC should not exist. To the extent OSGC exists at all, it is not authorized to bring the present lawsuit as it does not advance OSGC's authorized commercial leasing activities. OSGC's lack of capacity was confirmed when the General Tribal Council tabled the motion to prosecute this suit.

## ARGUMENT

### A. The Complaint, and GBRE in particular, should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

#### 1. Facts as Alleged in the Complaint.

The City's arguments pursuant to Rules 12(b)(6) and 12(b)(1) are based solely on the facts alleged in the Complaint. The City's arguments pursuant to Rules 9(a), 12(b)(2), and 17(b)(2) are based on supporting facts as required by Rule 9(a). The following allegations from the Complaint provide the relevant background for dismissal based on Rules 12(b)(6) and 12(b)(1).

OSGC sought to build a facility in Green Bay that would convert municipal solid waste into electricity by heating the waste at high temperatures to produce "syngas," similar to natural gas or methane. Complaint, ¶ 2. The City originally granted the CUP in March 2011 following a voluminous application and lengthy presentations by OSGC, and contingent upon compliance with City building code, building permits, standard site plan review and approval and all Federal and State environmental standards related to the proposed use. Complaint, ¶¶ 23–26, 31. While OSGC was obtaining the necessary permits and approvals, public opposition to the facility mounted. *Id.*, ¶ 39. Some faction of the opposition groups accused OSGC of lying in its application in order to obtain the CUP. *Id.*, ¶ 42. In response, the City held a public hearing. *Id.*, ¶ 45. OSGC submitted written materials and appeared before both the Plan Commission and the Common Council in defense of the CUP. *Id.*, ¶¶ 46, 47, 56. Following a public hearing, the Common Council voted

seven to five to rescind the CUP, offering no explanation for its decision. *Id.*, ¶¶ 57, 58. Later, the City Attorney sent a letter claiming that OSGC made "false statements and misrepresentations" regarding "the public safety and health aspect of the Project and the Project's impact upon the City's environment" and "emissions, chemicals, and hazardous materials." *Id.*, ¶ 60.

OSGC requested an administrative appeal. Complaint, ¶ 61. The City Council denied the request pursuant to Wisconsin Statute § 68.11. *Id.*, ¶ 61. OSGC then invoked its right to certiorari review of the City's actions in Wisconsin state court. *Id.*, ¶ 63. The Wisconsin Circuit Court reviewed the City's decision to rescind the CUP and denied OSGC's petition for certiorari. *Id.*, ¶ 65.

OSGC then appealed to the Wisconsin Court of Appeals. *Id.*, ¶ 65. The Wisconsin Court of Appeals applied state law to determine "whether the City exercised [its authority to revoke a CUP based on misrepresentations made during the permitting process] in an arbitrary manner, and without substantial supporting evidence." *Oneida Seven Generations Corp., LLC v. City of Green Bay*, 2014 WI AP 45, ¶ 18, 353 Wis. 2d 553, 846 N.W.2d 33 (unpublished), *aff'd*, 2015 WI 50, ¶ 93, 362 Wis. 2d 290, 865 N.W.2d 162 (attached to Complaint as "Exhibit A"). Finding that "the scant statements the City cites as support for its revocation action do not constitute substantial evidence of misrepresentation," the Wisconsin Court of Appeals ordered that the Circuit Court decision be reversed. Exhibit A, p. 22, ¶ 43.

OSGC then requested that the City reissue the CUP. Complaint, ¶ 70. The City did not reissue the CUP, but appealed to the Wisconsin Supreme Court. *Id.*, ¶ 71. The Wisconsin Supreme Court focused only on "whether the evidence was such that [the City] might reasonably make the order or determination in question." *Oneida Seven Generations Corp., LLC v. City of Green Bay*,

2015 WI 50, ¶ 41–42, 362 Wis. 2d 290, 865 N.W.2d 162 (attached to Complaint as "Exhibit B"). On March 29, 2015, it affirmed the Wisconsin Court of Appeals decision. *Id.*; Complaint, ¶ 71.

OSGC does not allege to have taken any additional action on the order prior to filing this Complaint. *See id.* The Complaint alleges claims for violation of 42 U.S.C. § 1983 based on substantive and procedural due process. Complaint, ¶ 75–96.

### 2. Standards of Review for Rule 12(b)(6).

To survive a motion to dismiss, the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a). While the Complaint's well-pled allegations must be accepted as true and all reasonable inferences drawn in its favor, *see, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007), the Court "need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. Rule 10(c). Consideration of the Exhibits does not convert this motion to dismiss into a motion for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

"When an exhibit attached to the complaint contradicts the allegations in the complaint, ruling against the nonmoving party on a motion to dismiss for failure to state a claim is consistent with the court's obligation to review all facts in the light most favorable to the nonmoving party." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Massy v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) ("where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.").

### 3.     OSGC has failed to state a claim because its available state court remedies satisfied substantive and procedural due process.

OSGC has received adequate process under the law, including relief from the very local land-use decision it now asks this Court to review.  To state a claim under either substantive or procedural due process, OSGC must show that these state law remedies were inadequate.  As to procedural due process, under *Bettendorf v. St. Croix County*, "[w]here a claimant has availed himself of the remedies guaranteed by state law, due process is satisfied unless he can show that such remedies were inadequate."  631 F.3d 421, 426 (7th Cir. 2011) (dismissing procedural due process claims based on a zoning designation where plaintiff himself initiated state court review and was afforded adequate process in state court system).  As to substantive due process, the Seventh Circuit has repeatedly held that "in addition to showing that the decision was arbitrary and irrational, the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies."  *Polenz v. Parrott*, 883 F.2d 551, 559 (7th Cir. 1989) (remanding substantive due process claim based on denial of an occupancy permit for a determination as to adequacy of state law remedies).  OSGC has not alleged a violation of a substantive constitutional right.  Its allegations that the City "acted arbitrarily and capriciously" do not cut it.  *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998) ("Its allegation that the defendants acted … in an arbitrary and capricious manner does not supply the essential element of a separate constitutional violation.") (dismissing substantive due process claim where plaintiff failed to allege that state law remedies were inadequate and had actually received state court review of the same land-use decision).

In terms of what constitutes adequate state law remedies, "scant process is all that is 'due' in zoning cases."  *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994).  "The opportunity to apply for a [writ of certiorari] is enough."  *Id.* (dismissing residential

developer's due process claim based on denial of a zoning application where the developer could have pursued common law writ of certiorari); *see also Donohoo v. Hanson*, No. 14-cv-309-wmc (W.D. Wis. Sept. 3, 2015) (unreported) ("[S]o long as there are adequate local or state means for obtaining review of a zoning decision, procedural due process is satisfied.").

More robust constitutional protections are available under the Fifth Amendment and Equal Protection Clause, but OSGC has not invoked the Fifth Amendment and seeks only out-of-pocket expenses, lost profits, and legal expenses—not the market value of the property. In *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, the Seventh Circuit affirmed that a complaint with identical features did not allege a Fifth Amendment takings claim. 406 F.3d 926 (7th Cir. 2005). Unlike a takings claim, the scope of property interests protected by due process in land-use cases is exceedingly narrow because "[s]tate and local governments are not required to respect property owners' rights… State and local governments may regulate and even take property; they must *pay* for what they take but are free to use the land as they please." *River Park*, 23 F.3d 164, 167 (1994). When it comes claims based on land-use decisions, "Federal Courts are not zoning boards of appeal." *See, e.g.*, *id.*, 165.

The Complaint fails to allege that OSGC's state court remedies were inadequate, and the facts alleged do not support such an inference. To the contrary, the Complaint incorporates, as exhibits, the decisions of the Wisconsin Court of Appeals and Wisconsin Supreme Court. Complaint, ¶ 66, Exhibit A; ¶ 71, Exhibit B. These decisions were the fruit of OSGC's "opportunity to apply for a writ"—an opportunity that satisfies procedural and substantive due process and defeats OSGC's claim under *River Park*, 23 F.3d at 167.

It is immaterial for purposes of the Due Process Clause whether, as OSGC alleges, "the City Council meeting on October 16, 2012 was not a meaningful hearing" or that "several alderpersons had *ex parte* communications with opponents of the project and made up their minds to rescind the CUP—even prior to the Council convening to consider the issue." Complaint, ¶¶ 91, 92. OSGC had a full opportunity to air these grievances against the City in state court proceedings. *See* Exhibits A and B.

Perversely, OSGC appears to rely on the favorable state court decisions as proof of its denial of due process. That OSGC won in state court does not undermine the adequacy of due process OSGC received under state law—it reinforces it. Where a plaintiff has been relieved of a land-use decision by a state court, he cannot state a federal claim for due process violations. In *Donohoo v. Hanson*, a landowner alleged procedural and substantive due process violations for having been denied a permit to construct an addition to his lakefront home. No. 14–c–309–wmc, *1 (W.D. Wis. Sept. 3, 2015) (unpublished), *aff'd*, No. 16-2405 (7th Cir. Oct. 28, 2016) (unpublished). Before pursuing the federal lawsuit, Donohoo had filed a petition for a writ of certiorari in state court and, while the certiorari action was pending, was issued the land use permit. *Id.* The court rejected his due process claims: "Donohoo does not allege that state law remedies are inadequate. Moreover, such an allegation would be groundless. In this very case, Donohoo pursued a certiorari action. He subsequently obtained a land use permit." *Id.*, *9. *See also Harding v. County of Door*, 870 F.3d 430 (7th Cir. 1989) (finding no violation of condominium developer's due process rights where the county withdrew a building permit based on a neighbor's complaint, but the withdrawal was overturned by Wisconsin Court of Appeals); *Minneapolis Auto Parts Co., Inc. v. City of Minneapolis*, 572 F.Supp. 389, 394 (D. Minn. 1983) (finding no due process violation where plaintiffs were granted permits in state court proceedings).

The timing of the state law remedies also does not undermine their adequacy. OSCG alleges that it "proposed the waste-to-energy project when it did because of the availability of federal, state and local grants, tax deductions and other incentives [which] have expired, such that the project is no longer economically viable." Complaint, ¶ 73. It does not allege when these incentives expired relative to its available remedies, but it does not matter. Due process does not require that state law remedies arrive in time to preserve business expectations. In *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, a wind farm developer complained that the city's arbitrary failure to issue building permits in time to save a profitable power purchase agreement violated his right to due process. 769 F.3d 485 (7th Cir. 2014). As this Court observed, "[t]he fact that it might not have succeeded in time for CEnergy to meet its contractual deadline anyhow is of no moment. Due process requires only a state court remedy, not a guaranteed win by the applicant's contractual deadline." No. 12–C–1166 (E.D. Wis. July 3, 2013) (J. Griesbach, presiding), *aff'd*, 769 F.3d 485 (7th Cir. 2014); *see also River Park v. City of Highland Park*, 23 F.3d 164 (1994) (finding no due process violation where city deliberately delayed rezoning until developer went bankrupt); *Harding*, 870 F.3d 420 (7th Cir. 1989) (finding no due process violation where condominium developer won reversal of zoning decision in state court but, by that time, lacked financing to complete the project).

Similarly, it does not matter that the state court remedies might not recompense OSGC for its alleged "out-of-pocket expenses of approximately $5.2 million, lost profits of approximately $16 million, and substantial legal expenses, including attorney's fees to pursue the state court proceedings and this federal case." Complaint, ¶¶ 85, 96. The amount of damages available under state law remedies does not undermine their adequacy. The contrary argument was squarely rejected in *Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n*:

The fact that a plaintiff "might not be able to recover under [state law] remedies the full amount which he might receive in a § 1983 action is not…determinative of the adequacy of the state remedies." *Hudson v. Palmer*, 468 U.S. 517, 535, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "[U]nless the remedy which an injured party may pursue in state court can readily be characterized as inadequate to the point that it is meaningless or nonexistent," courts should not ignore the Supreme Court's warning that the Fourteenth Amendment should not be treated as a "'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Easter House v. Felder*, 910 F.2d 1387, 1404–06 (7th Cir.1990) (quoting *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

366 F.Supp.2d 792 (W.D. Wis. 2005) (denying due process claim on motion to dismiss).

**4.    OSGC has failed to state a claim because it has failed to vindicate its rights in state court.**

While the state court decisions themselves are more than enough process to invalidate OSGC's claim, they also made available additional state law remedies, namely enforcing the state court decisions.  OSGC's failure to pursue these additional state remedies provides an independent basis for dismissing the Complaint.

In zoning cases, a plaintiff must seek vindication in state court before seeking redress in federal court.  The Seventh Circuit recognized in *Gamble v. Eau Claire County* that "even if a taking can be challenged as a denial of substantive due process, a suit based on this theory is premature if the plaintiff has possible state remedies against the zoning regulation or other state action that he wants to attack."  5 F.3d 285, 286–87 (7th Cir. 1993).  *CEnergy-Glenmore* confirmed that this requirement applies to both procedural and substantive due process challenges.  "Regardless of how a plaintiff labels an objectionable land-use decision (i.e. as a taking or as a deprivation without substantive or procedural due process), recourse must be made to the state rather than federal court."  *CEnergy-Glenmore*, 769 F.3d 485, 489 (affirming a motion to dismiss where plaintiff failed to pursue his state law remedies); *See also River Park*, 23 F.3d 164, 167 ("A

person contending that state of local regulation of the use of land has gone overboard must repair to state court.").

OSGC was entitled to enforce the state court judgments by execution pursuant to Wisconsin Statute § 815.01, "[t]he owner of a judgment may enforce the same in a manner provided by law," and § 815.02:

> Where [a judgment] requires the performance of any other act a certified copy of the judgment may be served upon the party…who is required to obey the same, and if he or she refuse he or she may be punished for contempt, and his or her obedience enforced.

If the City then failed to obey the judgment, OSGC could have brought a motion for contempt under Wisconsin Statute § 785.03(1)(a):

> A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

OSGC alleges that after the Court of Appeals' decision, it "met with the City to request the re-issuance of the CUP" and then "sent a follow-up letter," Complaint, ¶ 70, that "[t]he City also refused OSGC's request to re-issue the CUP after the Court of Appeals decision in favor of OSGC," *id.*, ¶ 95, and that "the City never re-issued the conditional use permit to OSGC," *id.*, ¶ 72. It does not allege that it ever attempted to enforce either the Wisconsin Court of Appeals or Wisconsin Supreme Court judgments by execution, let alone renew its request for the CUP after receiving the Wisconsin Supreme Court judgment.

This Court is free to ignore OSGC's colorful, but conclusory allegation that "OSGC has exhausted its potential state law remedies. Only this honorable court remains as a venue to deliver justice to OSGC." Complaint, ¶ 74; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The allegation is contradicted by the Exhibits

attached to the Complaint. OSGC cannot seek federal review of a local land-use decision without first taking full advantage of state law remedies, particularly when those remedies include a judgment that could eliminate the offending conduct if only OSGC would enforce it.

### 5. OSGC has failed to state a claim because it has failed to allege a constitutionally protected property interest.

The first element of a claim for deprivation of due process rights is "that the claimed interest is a protected property or liberty interest under the fourteenth amendment." *Polenz v. Parrott*, 883 F.2d 551, 555 (1989).

The interests OSGC alleges are subject to constitutional protection—"the construction, development and occupation of the waste-to-facility based on the CUP and the building permit issued by the City" and "its contracts for waste-to-energy with third-parties, and various grants and tax-credits for the project"—are all contingent on the CUP. Complaint, ¶¶ 88, 89. The CUP is not a protectable property interest and cannot support a contingent protectable interest.

Protectable property interests are defined by state law, *Polenz*, 883 F.2d 551 (1989), and exist only when the state's discretion is "clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006). Under Wisconsin law, including the decisions attached to the Complaint, not only is a CUP subject to a municipality's discretion, it is explicitly not property. "The decision to revoke a CUP, like the decision to grant one, involves the exercise of a municipality's discretion." Exhibit A, p. 10, ¶ 20. (citing *Roberts v. Manitowoc Cnty. Bd. of Adj.*, 2006 WI App 169, ¶ 10, 295 Wis. 2d 522, 721 N.W.2d 499). "A conditional use permit is not property; it is a type of zoning designation." Exhibit B, p. 35, ¶ 93. (quoting *Rainbow Springs Golf Co., Inc. v. Town of Mukwonago*, 2005 WI App 163, ¶ 18, 284 Wis. 2d 519, 702 N.W.2d 40).

Case 1:16-cv-01700-WCG   Filed 02/07/17   Page 12 of 26   Document 10

While the Supreme Court and Seventh Circuit have both acknowledged the "theoretical possibility that a land-use decision…could constitute a deprivation of property without substantive due process of law," this possibility does not excuse the threshold requirement of a protectable property interest. *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485 (2014) (citing *Polenz v. Parrott*, 883 F.2d 551 (1989)). For example, *Polenz* found a protectable property interest in "the right of use" where the City of Oak Creek denied an occupancy permit, without which plaintiffs "could not occupy the premises for *any use* for a period of eighteen months." 883 F.2d at 55 (emphasis in original) (remanding for a determination on adequacy of state law remedies). And *River Park, Inc. v. City of Highland Park* found a protectable property interest in a zoning classification where state law required the City to grant the plaintiff's zoning application. 23 F.3d 164, 165 (7th Cir. 1994) (dismissing complaint because available state law remedies were adequate).

Neither the Supreme Court nor the Seventh Circuit has definitely concluded that a land-use decision actually amounted to a deprivation of property without substantive due process, let alone found that a CUP could support such a deprivation. When asked to do so by the wind farm developer in *CEnergy-Glenmore*, the Seventh Circuit remarked that "[w]hether CEnergy has even identified a property interest in the building permits it sought, its use of the land it leased, or its agreement with WPS is questionable, but we need not decide those issues." 769 F.3d 485, 488 (dismissing due process claim for failure to show actions were arbitrary and failure to seek recourse under state law); *see also Donohoo v. Hanson*, No. 14–c–309–wmc, *1 (W.D. Wis. Sept. 3, 2015) (unpublished), *aff'd*, No. 16-2405 (7th Cir. Oct. 28, 2016) (dismissing due process claims by "[a]ssuming, without deciding, that Donohoo's requested use permit constituted a property interest that implicated due process…"). Similarly, this case is easily disposed of without addressing the

Case 1:16-cv-01700-WCG   Filed 02/07/17   Page 13 of 26   Document 10

issue, but if addressed, the Wisconsin state judgments are controlling. "A conditional use permit is not property." Exhibit B, p. 35, ¶ 93.

### 6. OSGC has failed to state a claim because the decision to rescind the CUP was not arbitrary in the Federal constitutional sense.

OSGC must show that the City "exercised its power without reasonable justification in a manner that shocks the conscience," *Bettendorf*, 631 F.3d 421, 426 (7th Cir. 2011), and "only the most egregious official conduct" qualifies. *CEnergy-Glenmore*, 769 F.3d 485, 488 (2014). "A plaintiff bears a very heavy burden in a substantive due process claim attacking a decision of local zoning officials." *Polenz*, 883 F.2d 551, 558. "And rightly so, for the federal courts are not zoning boards of appeal and will not overturn merely erroneous decision." *Id.*

This Court recently applied the "shocks the conscience" test in *GEnergy-Glenmore* where the plaintiff alleged due process violations based on the Town of Glenmore unreasonably dragging its feet on a building application to kill a wind turbine project. No. 12–C–1166, *1. There, as here, there were no allegations of "corruption or self-dealing by the members of the Town Board" and "no allegation that the Board was bribed or that members had a financial interest in killing CEnergy's contract." *Id.* As in the Complaint, the land-use decision was allegedly motivated by community opposition. *Id.*; Complaint, ¶¶ 57, 81. The Court held "[i]t is hardly surprising, or shocking, that an elected Town Board would be responsive to its more vocal constituents." *CEnergy-Glenmore*, NO. 12–C–1166, *5. The Seventh Circuit affirmed, "[a]s far as the Constitution is concerned, popular opposition to a proposed land development plan is a rational and legitimate reason for a legislature to delay making a decision." 769 F.3d at 488.

*CEnergy* governs here. OSGC has failed to allege facts that show the City acted arbitrarily in the constitutional sense and has, therefore, failed to state a claim for a violation of substantive due process.

OSGC cites the state court findings to show that the decision was arbitrary. Complaint, ¶¶ 66–68, 80, Exhibits A and B. However, the Seventh Circuit has repeatedly held that "[a] violation of state law is not a denial of due process law." *See, e.g.*, *Coniston Corp v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988). Furthermore, the Wisconsin Court of Appeals defined an "arbitrary decision" as "one that is 'unreasonable or without a rational basis'" or "the result of an unconsidered, wilful or irrational choice, and not the result of the 'sifting and winnowing' process'" and "capricious" as "a whimsical, unreasoning departure from established norms or standards." Exhibit A, p. 11, ¶ 21. The Supreme Court did not even apply an "arbitrary" standard, but asked only "whether the evidence was such that it might reasonably make the order or determination in question." Exhibit B, p. 17, ¶¶ 41–42. The state court rulings to no evidence a constitutionally arbitrary action.

OSGC also relies on the allegation that the City manufactured a "pretext" of misrepresentations to justify its decision to rescind the CUP. Complaint, ¶ 81. But this conduct allegedly occurred after the vote to rescind the CUP. Complaint, ¶¶ 57–60. At the time of the vote, the Complaint alleges that "The Common Council provided absolutely no explanation at the hearing supporting its decisions." Complaint, ¶ 58. OSGC expects more than it's due. "Cities may elect to make zoning decisions through the political process" including "by putting the question to a popular referendum, direct democracy with no hearing of any kind." 23 F.3d 164, 166 (citing *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668 (1976)). If OSGC was not even entitled to a hearing, it certainly was not entitled to any justification, and the allegations that the justification was an after-the-fact "sham" do not amount to due process violation. Complaint, ¶ 81.

7. **As to GBRE, the Complaint fails to make any allegations beyond its citizenship, let alone state a claim upon which relief can be granted.**

"Federal Rule of Civil procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). GBRE appears exactly twice in the Complaint—once in the caption, and once in paragraph 12:

> Green Bay Renewable Energy, LLC is a Delaware limited liability company with its principle place of business at 1239 Flightway Drive, DePere, Wisconsin 54115. It is a wholly-owned indirect subsidiary of Oneida Seven Generations Corporation, formed for the purpose of developing the facility.

Paragraph 12 is not a "short and plain statement" of GBRE's claim, it does not show that GBRE is entitled to relief, and it does not give the City fair notice of GBRE's claims. To the contrary, it is impossible from the Complaint to know why GBRE is named as a plaintiff. The only allegations of wrongdoing pertain to OSGC. *See* Complaint, ¶¶ 85–96 (alleging that OSGC's substantive and procedural due process rights were violated, that OSGC incurred out-of-pocket and legal expenses and lost profits, and that OSGC had a constitutionally protected interest in the CUP). As to GBRE, there is only paragraph 12.

Even parsing paragraph 12 does nothing to explain GBRE's claim. The allegations that GBRE "is a wholly-owned indirect subsidiary of Oneida Seven Generations Corporation" and "was formed for the purpose of developing the facility" do not allow GBRE to piggy-back on OSGC's allegations when, according to the Complaint, OSGC and GBRE are distinct corporations. Complaint, ¶¶ 11–12; *see Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) ("A corporation exists separately from its shareholders, officers, directors and *related corporations*." (emphasis added)); *Aetna Cas. and Sur. Co. of Hartford, Connecticut v. Kerr-*

*McGee Chem. Corp.*, 875 F.2d 1252, 1256 (allowing a *parent* corporation to litigate *subsidiaries'* claims—not a subsidiary corporation to litigate a parent's claims). As such, the Complaint fails to state a claim as to GBRE.

**B.** **GBRE has failed to allege injury in fact and should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.**

**1.** **Standard of Review under Rule 12(b)(1)**

"Article III of the constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements. *Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559–60 (1992)). "To establish Article III standing, 'a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Id.*

There are two types of subject matter jurisdiction challenges, factual and facial. *Id.* A facial challenge argues that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." *Id.* (citing *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). For facial subject matter jurisdiction challenges under Rule 12(b)(1), "a court should use *Twombly-Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.*

2. **The Complaint does not allege that GBRE has suffered an injury in fact.**

As the party invoking federal jurisdiction, GBRE bears the burden of establishing standing. The Complaint does not allege that GBRE suffered any injury at all, let alone that it was injured by the City, or that a favorable decision will redress its injury. *See Silha v. ACT, Inc.*, 807 F.3d 169. The only injury alleged in the Complaint is to OSGC. Complaint, ¶¶ 85–96 (alleging that OSGC's substantive and procedural due process rights were violated, that OSGC incurred out-of-pocket and legal expenses and lost profits, and that OSGC had a constitutionally protected interest in the CUP).

The allegation that GBRE is "a wholly-owned indirect subsidiary of [OSGC]" does not support an inference of injury to GBRE. *See* Complaint, ¶ 12. A parent company has Article III standing on the basis of injury to a subsidiary because injury to a subsidiary can cause "actual financial injury" to the parent, and a judicial determination as to the rights of the subsidiary "would prevent such injuries." *In re Neurontin Mktg. & Sales Practices Litig.*, 810 F.Supp.2d 366, 369 (D.Mass. 2011) (discussing *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335–36 (1990)). The opposite is not true. A subsidiary does not have standing on the basis of injury to a parent company—injury to the parent company does not cause actual financial injury to the subsidiary, and a judicial determination as to the rights of the parent has no impact on the rights of the subsidiary.

C. **The Complaint should be dismissed under Rules 12(b)(2), 9(a), and 17(b)(2) for lack of corporate capacity to sue.**

1. **Facts Relevant to Dismissal Under Rule 9(a) and 17(b)(2).**

The following facts are submitted solely for the purpose of the City's arguments under Rule 9(a), and not for purposes of Rule 12(b)(6).

18

Plaintiff OSGC is "a tribal corporation chartered under the laws of the Oneida Nation, a federally recognized Indian tribe." Complaint, ¶ 11. Plaintiff GBRE is "a Delaware limited liability company" and "wholly-owned indirect subsidiary of Oneida Seven Generations Corporation." Complaint, ¶ 12.

According to the OSGC Corporate Charter, the Charter was granted by the Oneida Business Committee based upon authority vested in it by the Oneida General Tribal Council. Declaration of Gregg J. Gunta in Support of Defendant's Motion to Dismiss the Complaint for Lack of Capacity to Sue ("Gunta Decl."), ¶ 3, Ex. 2.

As described by the Oneida Nation constitution, the General Tribal Council is "[t]he governing body of Oneida Nation" and is "composed of all the qualified voters of the Oneida Nation." Ex. 1, Constitution and By-Laws of the Oneida Nation (2015), Article III, § 1. The Business Committee consists of nine elected members and is empowered by the constitution to "perform such duties as may be authorized by the General Tribal Council." *Id.*, § 3.

On December 15, 2013, the General Tribal Council moved to dissolve OSGC. Declaration of Leah Dodge ("Dodge Decl."), ¶ 3, Ex. 6. The motion was recorded as "Motion by Cathy L. Mextoxen to dissolve Seven Generations Corporation and for Frank Cornelius to assist and work with the Business Committee on the dissolution, seconded by Scharlene Kasee. **Motion approved by a hand count: 814 yes, 689 no, 69 abstained, total-1,572**." *Id.*

On December 24, 2013, the Oneida Business Committee adopted "BC Resolution 12-24-13-A Reorganization of Oneida Seven Generations Corporation." Gunta Decl., ¶ 4, Ex. 3. The resolution was "to begin the process of dissolution of the Oneida Seven Generations Corporation in a business-like manner." *Id.*, p. 2. It acknowledged that "the General Tribal Council and the Oneida Business Committee have been informed that dissolution of Oneida Seven Generations

Corporation may take up to or exceed 10-12 months in order to minimize negative financial consequences and wind up the activities of the corporation in a business-like manner." *Id.*, p. 1. Under the resolution, Article VI of the OSGC corporate charter, "PURPOSES AND POWERS" was modified as follows:

> The purpose of this Corporation is to engage in ~~any lawful activity within the purposes for which the corporation may be organized under the Oneida Constitution and Oneida tribal laws, ordinances and jurisdiction~~ *activities related solely to the purposes of commercial leasing.*

*Id.*, p. 2.

On May 27, 2015, the Oneida Business Committee adopted "BC Resolution 5-27-15-B Adoption of Amendments to the Oneida Seven Generations Corporate Charter Limiting Purposes to Commercial Leasing Activities Only." Gunda Decl., ¶ 5, Ex. 4. This Resolution recognized that "the General Tribal Council, on December 15, 2013, directed the Oneida Business Committee to dissolve the corporation" and "the Oneida Business Committee began the process of dissolution of the corporation by adoption of amendments to the corporate charter limiting its purposes, removing the board of directors, and appointing an agent for the sole purposes of dissolving the corporation in a financially responsible manner." *Id.*, p. 1. It also recognized that OSGC, GBRE, and the Oneida Tribe had been "sued in regard to alleged contract violations." *Id.*

> [T]he litigation, began in early 2014, remains yet unresolved and subject to the appeals process, such that the Oneida Business Committee has determined that a longer term solution and compliance with the General Tribal Council directive is needed to clearly limit the corporation to commercial leasing and restrict its powers and authorities to maintaining the value of existing assets.

*Id.*[1]

---

[1] The 2014 litigation was the suit by ACF Leasing, LLC, ACF Services, LLC, and Generation Clean Fuels, LLC, against Green Bay Renewable Energy, LLC, Oneida Seven Generations Corporation and the Oneida Tribe of

The Oneida Business Committee, therefore, resolved to amend the OSGC Corporate

Charter again, *id.*, such that Article VI, "PURPOSES AND POWERS," now states:

> The purpose of this Corporation is to engage in activities related
> solely to the purposes of commercial leasing. The Corporation is
> prohibited from engaging in any action not specifically for the
> purposes of commercial leasing and nothing in the powers granted
> under this Articke [sic] shall be interpreted to authorize any other
> purpose or power. In the event of any cause for interpretation of
> the purposes and powers granted in this article, such interpretation
> shall be narrowly construed to limit the purposes and powers to
> commercial leasing activities. The powers of the Corporation are:
>
> * * *
>
> (H)    To sue and be sued in its Corporate name as herein
>        specifically provided to the extent allowed by Oneida
>        tribal, state or federal law upon any contract, claim or
>        obligation of the Corporation arising out of the
>        accomplishment of its purposes…

Gunta Decl., ¶ 5, Ex. 4, p. 3–4.

On August 10, 2016, there was a special General Tribal Council meeting. Dodge Decl.,

¶ 4, Ex. 8. In response to pressure to finally dissolve OSGC as resolved by the General Tribal

Council in 2013, opponents to the dissolution moved "to rescind the December 15, 2013 action

dissolving the Oneida Seven Generations Corporation and restrict the corporation to commercial

leasing activities." *Id.* The motion was amended as "to allow Oneida Seven Generations

Corporation to continue litigation with the City of Green Bay." *Id.* This amendment to the motion

was made specifically to allow OSGC to continue litigation against the City of Green Bay. Dodge

Decl., ¶ 6, Ex. 10. The main motion to rescind OSGC's dissolution was not voted on. Instead,

proponents of the dissolution moved to table it. Dodge Decl., Ex. 8; *see also* Dodge Decl., Ex. 9

at 2:44:29 (Frank Cornelius addressing the General Tribal Council: "What I think we should do is

---

Indians of Wisconsin. *ACF Leasing, LLC et al. v. Green Bay Renewable Energy, LLC et al.*, No. 1–14–3443 (Ill. Ct. App. Oct. 13, 2015) (unreported).

table the main motion because … the General Tribal Council already voted… to close it and you didn't do that… the business committee failed…").  The General Tribal Council voted to table the main motion and its amendments.  Dodge Decl., Ex. 8.  On October 2, 2016, the meeting reconvened, and a motion was made to take the item from the table, but this motion failed.  *Id.*

The General Tribal Council follows Robert's Rules of Order.  Gunta Decl., ¶ 6, Ex. 5. Under "Robert's Rules of Order As Used by the General Tribal Council," a motion to table "has the effect of taking the entire subject matter out of discussion." *Id.*, p. 3.  When tabled in a special meeting like the August 10, 2016 meeting, "the matter dies, unless there is another meeting scheduled to discuss the subject." *Id.*

This lawsuit was initiated by plaintiffs OSGC and GBRE on December 23, 2016. Complaint.  The Complaint alleges due process violations based on the City's decision on October 16, 2012, to rescind a conditional use permit that would have allowed OSGC to build a waste-to-energy facility.  Complaint, ¶¶ 55–58.  OSGC has already litigated the decision in Wisconsin courts and won a reversal.  Complaint, Exs. A, B.

### 2.  Standard of Review for 9(a) and 17(b)(2), Capacity to Sue.

Under Rule 9(a), "a pleading need not allege… a party's capacity to sue or be sued," but a party may raise the issue "by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."  Fed. R. Civ. P. 9(a).  Under Rule 17(b), "Capacity to sue or be sued is determined…for a corporation, by the law under which it was organized."  Fed. R. Civ. P. 17(b).

"Questions involving a party's capacity to sue or be sued [] turn on issues of fact" and "must therefore be identified in either a responsive pleading or motion." *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996).  "The pleading requirements for capacity thus correspond to those for personal jurisdiction." *Id.*  As to the requirements for personal jurisdiction,

A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.

The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held. When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, as the district court did here, the plaintiff, 'need only make out a *prima facie* case of personal jurisdiction.' In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003) (citations and parentheticals omitted).

### 3. OSGC lacks capacity to bring the present suit.

Rather than dissolve OSGC as directed by the General Tribal Council in 2013, the Business Committee amended the OSGC Corporate Charter. Before the dissolution, the purpose of OSGC was "to engage in any lawful activity within the purposes for which the corporation may be organized under the Oneida Constitution and Oneida tribal laws, ordinances and jurisdiction," and OSGC was empowered to sue on any claim "arising out of the accomplishment of its purposes." Gunta Decl., Ex.2, Article VI. At the time this lawsuit was filed, OSGC was "prohibited from engaging in any action not specifically for the purposes of commercial leasing…" Gunta Decl., Ex. 4, p. 3–4. OSGC may still sue on claims of the Corporation "arising out of the accomplishment of its purposes," but its purposes are strictly limited to "commercial leasing." *Id.* In determining whether the present lawsuit "arise[s] out of the accomplishment" of commercial leasing, OSGC's powers and purposes "shall be narrowly construed to limit the purposes and powers to commercial leasing activities." *Id.*

The claims raised in the Complaint do not "arise out of the accomplishment" of commercial leasing activities. Any rights that might even tangentially impact OSGC's ability to commercially lease the property at issue were already determined by the Wisconsin Court of Appeals and Wisconsin Supreme Court. *See* Complaint, Ex. A (*Oneida Seven Generations Corp., LLC v. City of Green Bay*, 2015 WI 50, ¶ 41–42, 362 Wis. 2d 290, 865 N.W.2d 162) and Ex. B (*Oneida Seven Generations Corp., LLC v. City of Green Bay*, 2015 WI 50, ¶ 93, 362 Wis. 2d 290, 865 N.W.2d 162). The state court lawsuits reversed the City's decision to rescind a conditional use permit (and affirmed the reversal), restoring the conditional use permit and any commercial leasing interest OSGC may have had in the conditional use permit. *Id.* This lawsuit will not accomplish any commercial leasing activities, and OSGC is "prohibited" from bringing it. Gunta Decl., Ex. 4, p. 3.

But to even reach this analysis presupposes the ongoing existence of OSGC. Under Oneida law, the will of the Business Committee is clearly subordinate to that of the General Tribal Council. The Constitution and By-Laws of the Oneida Nation designates the General Tribal Council as "the governing body of the Oneida Nation." Ex. 1, Article III, § 1. The Oneida Constitution also instructs the Business Committee to "perform such duties as may be authorized by the General Tribal Council." *Id.*, § 3. This structure is affirmed in the Corporate Charter of Oneida Seven Generations which was granted by the Business Committee "based upon authority vested in it by the Oneida General Tribal Council." Gunta Dec., Ex. 2, Article II; Ex. 4, p. 3, Article II.

The 2013 General Tribal Council resolution to dissolve OSGC stripped the business committee of any authority to continue OSGC's corporate charter. At the time this lawsuit was filed on December 23, 2016, OSGC should no longer have existed under the law of Oneida Nation.

Whether or not OSGC still exists, and whether or not the present lawsuit accomplishes a commercial leasing activity, any doubts as to whether OSGC was authorized to bring the present lawsuit were resolved on August 10, 2016 by the General Tribal Council. The capacity of a corporation to sue is determined by the state of its incorporation, even if the corporation is dissolved. Fed. R. Civ. P. 17(b)(2); *Williams v. Bd. of Educ. of Chi.*, 506 Fed. Appx. 517, 519 (7th Cir. 2013) (applying the law of the state of incorporation pursuant to Rule 17(b)(2) to determine a dissolved corporation's capacity to sue). The Constitution and By-Laws of the Oneida Nation are silent on whether a dissolved corporation can sue, *see* Ex. 1, but the General Tribal Council—the governing body of the Oneida Nation—entertained a motion specifically designed to allow OSGC to continue litigation against the City of Green Bay. Dodge Decl., ¶¶ 4–6, Exs. 8–10. That motion did not pass. Ex. 8. It was tabled, and died. *Id.*; *see also* Gunta Decl., Ex. 5 ("Roberts Rules of Order As Used by the General Tribal Council"). This lawsuit should have died with it.

As to GBRE, even if OSGC continues to exist, it cannot delegate authority it does not have. GBRE has no more capacity to sue the City than OSGC.

## CONCLUSION

OSGC has failed to show that its state law remedies were inadequate, failed to exhaust those remedies, failed to identify a protectable property interest, and failed to show that the decision to rescind the CUP was arbitrary in the constitutional sense. For each of these independent reasons, the Complaint fails to state a due process violation cognizable under § 1983 and should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

As to GBRE, the Complaint has failed to allege anything at all beyond its own citizenship, let alone state a claim upon which relief can be granted or injury in fact sufficient to confer standing. GBRE should be dismissed pursuant to either Rule 12(b)(6) for failure to state a claim or 12(b)(1) for lack of subject matter jurisdiction.

The Complaint should further be dismissed because OSGC and GBRE lack of capacity to sue under Rules 12(b)(2), 9(a), and 17(b)(2).

Dated this 7th day of February, 2017.

GUNTA LAW OFFICES, S.C.
Attorneys for Defendant, City of Green Bay


By:     _/s/ Gregg J. Gunta_____
        Gregg J. Gunta, WI State Bar No. 1004322
        Ann C. Wirth, WI State Bar No. 1002469
        John A. Wolfgang, WI State Bar No.1045325
        9898 West Bluemound Road, Suite 2
        Wauwatosa, WI  53226
        T:  (414) 291-7979  /  F:  (414) 291-7960
        Email: gjg@guntalaw.com
               acw@guntalaw.com
               jaw@guntalaw.com