UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

ONEIDA SEVEN GENERATIONS
CORPORATION and GREEN BAY
RENEWABLE ENERGY, LLC,

        Plaintiffs,

                                 Case No. 16-CV-01700-WCG

    v.

CITY OF GREEN BAY,

        Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Eric J. Wilson (State Bar No. 1047241)
Amber C. Coisman (State Bar No. 1102371)
Godfrey & Kahn, S.C.
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone: (920) 432-9300
Fax: (920) 436-7988
ewilson@gklaw.com
acoisman@gklaw.com

*Attorneys for Plaintiffs*
*Oneida Seven Generations Corporation and*
*Green Bay Renewable Energy, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................... 4

I.      STANDARD OF REVIEW. ...................................................................... 4

      A.     Failure to State a Claim—Standard of Review Under Rule 12(b)(6). .................... 5

      B.     Failure to Plead Subject Matter Jurisdiction—Standard of Review Under Rule 12(b)(1). ................................................................... 6

      C.     Lack of Capacity to Sue—Standard of Review Under Rules 9(a) and 17(b)(2). .......................................................................... 6

II.    OSGC HAS SUFFICIENTLY PLED CLAIMS FOR PROCEDURAL AND SUBSTANTIVE DUE PROCESS VIOLATIONS. ................................ 8

      A.     OSGC Has Sufficiently Alleged A Constitutionally-Protected Property Interest. ..................................................................... 9

      B.     OSGC Has Exhausted Its State Law Remedies. .................................... 10

      C.     OSGC Has Sufficiently Alleged Its State Law Remedies Were Inadequate. ......................................................................... 14

      D.     OSGC Has Sufficiently Alleged A Procedural Due Process Claim. ................... 16

      E.     OSGC Has Sufficiently Alleged A Substantive Due Process Claim. ................... 18

III.   THE COMPLAINT PLEADS SUFFICIENT FACTS TO ALLEGE CLAIMS ON BEHALF OF GBRE. ....................................................... 23

IV.   ONEIDA SEVEN HAS THE CAPACITY TO SUE THE CITY OF GREEN BAY. ................................................................................... 24

CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5

*Atkinson v. Piper*, 181 Wis. 519, 195 N.W. 544 (1923) ...................................... 9

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ....................................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 5

*Bell v. City of Chicago*, 835 F.3d 736 (7th Cir. 2016) ......................................... 6

*Bettendorf v. St. Croix Cty.*, 631 F.3d 421 (7th Cir. 2011) ................................. 19

*Bradbury Co. v. Teissier-duCros*, 387 F. Supp. 2d 1167 (D. Kan. 2005) ............... 7, 25

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988) ................................. 20

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ..................................................... 5

*Bunn v. Khoury Enters., Inc.*, 753 F.3d 676 (7th Cir. 2014) ............................... 8

*Capitol Leasing Co. v. FDIC*, 999 F.2d 188 (7th Cir. 1993) ............................... 6

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ..................................... 25

*CEnergy-Glenmore Wind Farm # 1, LLC v. Town of Glenmore*, No. 12-C-1166,
  2013 WL 3354511 (July 3, 2013), *aff'd*, 769 F.3d 485 (7th Cir. 2014) ..................... 13, *passim*

*Centres, Inc. v. Town of Brookfield*, 148 F.3d 699 (7th Cir. 1998) ....................... 22

*Coniston Corp. v Vill. of Hoffman Estates*, 844 F.2d 461 (7th Cir. 1988) .............. 22

*Conley v. Gibson,* 355 U.S. 41 (1957) ................................................................. 6

*Cty. of Charles Mix v. U.S. DOI*, 674 F.3d 898 (8th Cir. 2012) .......................... 25, 26

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .............................................. 8

*Donohoo v. Hanson*, No. 14-309, 2015 WL 5177968 (W.D. Wis. Sept. 3, 2015) ........ 16

*Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990), *cert. denied*, 498 U.S.
  1067 (1991) ............................................................................................... 16-17

*Ecotone Farm, LLC v. Ward*, 639 Fed. App'x 118 (3d Cir. 2016) ....................... 19

*Europaper B.V. v. Integrated Material Mgmt. Serv., Inc.*, No. 01-211, 2003 WL 21688233 (N.D. Ill. July 17, 2003) ................................................................... 7, 24

*Freiburger v. Emery Air Charter,* 795 F. Supp. 253 (N.D. Ill. 1992) .......................... 6

*Goren v. New Vision Int'l,* 156 F.3d 721 (7th Cir. 1998) ............................................ 7

*Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, 337 Wis. 2d 484, 805 N.W.2d 127, *review denied*, 339 Wis. 2d 737 (2012) ...................... 12

*Hanlon v. Town of Milton*, 2000 WI 61, 235 Wis. 2d 597, 612 N.W.2d 44 .......................... 12, 16

*Harding v. Cty. of Door*, 870 F.2d 430 (7th Cir.), *cert. denied*, 493 U.S. 853 (1989) ................................................................................................ 16, 22

*Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987) ............................................... 25, 26

*Lawson v. CSX Transp., Inc.*, 245 F.3d 916 (7th Cir. 2001) .......................................... 8

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................................. 8, 17

*Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530 (7th Cir. 2008) ........................... 14

*Minneapolis Auto Parts Co. v. City of Minneapolis*, 572 F. Supp. 389 (D. Minn. 1983) ................................................................................................... 16

*Owen v. Lash,* 682 F.2d 648 (7th Cir. 1982) ............................................................... 17

*Peninsula Props., Inc. v. City of Sturgeon Bay*, No. 04-692, 2006 WL 1308093 (E.D. Wis. May 8, 2006) ......................................................................... 9, 10, 19-20

*Polenz v. Parrott,* 883 F.2d 551 (7th Cir. 1989) ......................................................... 10

*Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759 (7th Cir.), *cert. denied*, 561 U.S. 1026 (2010) .......................................................................................... 5

*River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994) ............................. 10, 18

*RNPM, LLC v. Cobas-Mondriguez*, 938 F. Supp. 2d 231 (D.P.R. 2013) ...................... 7

*Rueth v. U.S. EPA*, 13 F.3d 227 (7th Cir. 1993) ................................................... 6, 23

*Sloup v. Loeffler,* No. 05-1766, 2008 WL 3978208 (E.D.N.Y. Aug. 21, 2008) ................... 19

*State ex rel. Buchholz v. Hotel Wis. Realty Co.*, 181 Wis. 519, 195 N.W. 544 (1923) ................................................................................................... 9

*State ex rel. Klefisch v. Wis. Tel. Co.*, 181 Wis. 519, 195 N.W. 544 (1923) ................... 9

*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir.), *cert. denied*, 517 U.S. 1244 (1996) ...................... 6

*T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455 (E.D.N.Y. 2002) ........................ 20

*Tait v. Anderson Banking Co.*, 171 F. Supp. 3 (S.D. Ind. 1959) .................................................. 7

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008) .............................................................. 5

*Three Legged Monkey LP v. City of El Paso,* No. 14-CV-260**,** 2015 WL 12916439
(W.D. Tex. Jan. 8, 2015) ......................................................................................................... 19

*Zinermon v. Burch*, 494 U.S. 113 (1990) .................................................................................. 18

**Statutes**

26 U.S.C. § 45(d)(7) .................................................................................................................. 15

42 U.S.C. § 1983 ........................................................................................................................ 8

American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 1603,
123 Stat. 115, 364-66 (2009) ................................................................................................. 15

Wis. Stat. § 68.10(1) .................................................................................................................. 18

Wis. Stat. § 68.11 ............................................................................................................... 17, 18

Wis. Stat. § 68.13(1) .................................................................................................................. 12

Wis. Stat. § 785.01(1)(b) ........................................................................................................... 12

Wis. Stat. § 808.075 .................................................................................................................. 11

Wis. Stat. § 809.26 .................................................................................................................... 11

Wis. Stat. § 815.02 .................................................................................................................... 11

**Other Authorities**

Civil L. R. 7(j)(2) ...................................................................................................................... 7

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 5

Fed. R. Civ. P. 9(a) ................................................................................................................. 5, 6

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(2) .......................................................................................................... 5, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 5

Fed. R. Civ. P. 17(b)(2).................................................................... 5, 6, 8, 25

Fed. R. Civ. P. 56(a) ....................................................................... 8

Plaintiffs Oneida Seven Generations Corporation and Green Bay Renewable Energy, LLC (together, "OSGC"), by and through their counsel, Godfrey & Kahn, S.C., respectfully submit this response in opposition to the motion to dismiss the Complaint filed by the City of Green Bay (the "City") and the documents filed in support of that motion [ECF Dkt. Nos. 9, 10, 11, 12].

## INTRODUCTION

This extraordinary case arises from the outrageously arbitrary revocation of a conditional use permit by the City of Green Bay for reasons that were entirely fabricated. The City not only made up the reasons, but also dishonestly accused the corporate executives who applied for the permit of lying to the City—a charge expressly found false by the City's own Plan Commission. The City compounded its error by callously ignoring OSGC's subsequent pleas for justice. These actions truly shock the conscience and, for purposes of this action, constitute a violation of OSGC's constitutional right to due process.

The City now moves to dismiss OSGC's Complaint on similarly baseless grounds. Contrary to the City's contentions in its motion, OSGC has sufficiently alleged both procedural and substantive due process violations. In addition, both Oneida Seven Generations Corporation ("Oneida Seven") and its subsidiary Green Bay Renewable Energy, LLC ("GBRE") are proper plaintiffs and allege facts entitling them to relief. Although the City improperly urges the Court to consider materials outside the Complaint, if the Court does look to these other materials, it is abundantly clear that this lawsuit has been properly brought. For these reasons, the Court should deny the City's motion.

## BACKGROUND

Over six years ago, the City of Green Bay encouraged OSGC to locate and develop a waste-to-energy facility within Green Bay city limits. (ECF Dkt. No. 1, Compl. ¶¶ 1, 17.) In

reliance on the City's proclaimed support for the facility, OSGC purchased land at an industrial site well-suited for the project. (Compl. ¶¶ 20-21.)

Once the site had been purchased, OSGC submitted an extensive application to the City for a conditional use permit ("CUP") that would have allowed OSGC to construct the waste-to-energy facility at that location. (Compl. ¶¶ 22- 23.) On February 21, 2011, the Plan Commission considered the OSGC waste-to-energy project at its regularly scheduled meeting. (Compl. ¶ 25.) Following a presentation by OSGC, the Plan Commission voted unanimously to recommend that the City approve the CUP. (Compl. ¶ 26.)

On March 1, 2011, the City's Common Council met in open session to consider the Plan Commission's recommendation. (Compl. ¶ 27.) Following a presentation by OSGC and public comments, the City approved the CUP by a vote of ten-to-one. (Compl. ¶¶ 3, 31.)

In reliance on the CUP, OSGC invested significant funds developing the project by purchasing equipment and pursuing necessary permits from both state and federal regulators. (Compl. ¶¶ 4, 33.) OSGC also submitted detailed site plans and building plans to the City, as required under the City's zoning and building codes. (Compl. ¶ 36.) On August 3, 2011, the City approved those plans and issued a building permit. (*Id.*) With all required approvals in hand, OSGC proceeded with preparatory construction work. (Compl. ¶ 40.)

After this lengthy and public review process, a variety of groups began to voice opposition to the facility. (Compl. ¶ 41.) Not satisfied with the City's approval of the CUP, these opposition groups resorted to false accusations against OSGC, claiming without basis that OSGC had lied to the Plan Commission to obtain the original CUP. (Compl. ¶¶ 5, 41-43.)

Despite the absence of evidence that OSGC misrepresented anything in its CUP application, the Common Council sought input from the Plan Commission about whether OSGC

had lied to the City.  (Compl. ¶¶ 6, 44-45.)  In response, the Plan Commission held a lengthy public hearing to consider the accusations of the opposition groups.  (Compl. ¶ 6.)  At the conclusion of the hearing, the Plan Commission unequivocally and unanimously concluded that OSGC had *not* made any misrepresentations in applying for the CUP.  (Compl. ¶¶ 6, 47, 51.)

In complete disregard of the Plan Commission's determination in favor of OSGC, several alderpersons had *ex parte* communications with opponents of the project and made up their minds to revoke the CUP.  (Compl. ¶ 54.)  At the next Common Council meeting, on October 16, 2012, the City Attorney advised the Common Council that there was no legal basis to do so. (Compl. ¶ 55.)  Nevertheless, the Common Council inexplicably revoked the CUP anyway, concluding—with absolutely no legitimate basis whatsoever—that OSGC *had* lied to the City when applying for the CUP.  (Compl. ¶¶ 7, 57-58.)  The City's claims of "misrepresentations" were a false and hastily developed pretext, by which the City sought to stop the development of a renewable energy project that the City had not only supported, but had encouraged OSGC to locate in Green Bay.  (Compl. ¶ 81.)

On November 14, 2012, OSGC requested an administrative appeal of the Common Council's revocation of the CUP, which the City summarily denied without a hearing.  (Compl. ¶¶ 8, 61.)  Then, on November 19, 2012, OSGC sent a Notice of Claim to the City pursuant to Wis. Stat. § 893.80.  (Compl. ¶ 62.)  The City never responded.  (*Id.*)

OSGC was then forced to appeal the City's abuse of power to Wisconsin state court. (Compl. ¶ 62.)  In an opinion highly critical of the City's capricious actions, the Wisconsin Court of Appeals held that there was no reasonable justification for the City's revocation of the CUP. (Compl. ¶¶ 66-68, Ex. A.)

After the Court of Appeals' decision in favor of OSGC, the City could have acknowledged it was wrong and re-issued the CUP to OSGC.  (Compl. ¶ 69.)  OSGC even met with the City and requested that the City re-issue the CUP in light of the Court of Appeals' decision.  (Compl. ¶ 70.)  Instead of re-issuing the CUP and remedying the situation, the City appealed to the Wisconsin Supreme Court.  (Compl. ¶ 71.)  Over a year later, in a decision affirming the Court of Appeals, the Supreme Court held that the City could not have reasonably concluded that OSGC's statements regarding the proposed facility were misrepresentations. (Compl. ¶ 71, Ex. B.)

Despite firm rebukes by OSGC, its own legal counsel, and the Wisconsin courts, the City never re-issued the CUP.  (Compl. ¶ 72.)  OSGC proposed the waste-to-energy project when it did because of the availability of federal, state and local grants, tax deductions and other incentives.  (Compl. ¶ 73.)  Unfortunately, as a direct result of the wrongful acts by the City, those opportunities have expired, such that the project is no longer economically viable.  (*Id*.)

In seeking reconsideration by the City of its decision to revoke the CUP, and by seeking legal redress before the Wisconsin state courts, OSGC has exhausted its potential state law remedies.  (Compl. ¶ 74.)  Yet, OSGC still has received no relief.  The CUP remains revoked, the building permit, air permits, contracts and grants have become useless, and OSGC has suffered millions of dollars in damages as a result.  Accordingly, OSGC brought due process claims under 42 U.S.C. § 1983 against the City in this Court.

## ARGUMENT

### I.     STANDARD OF REVIEW.

The procedural posture of this case is important.  Because this matter comes to the Court on a motion to dismiss, the Court will necessarily draw all inferences in favor of the plaintiffs. As explained below, given the extraordinary nature of the circumstances involved here, the Court

should do so without concern that its ruling will open the floodgates for a deluge of ill-conceived federal due process claims.

The City moves to dismiss OSGC's Complaint pursuant to Federal Rules of Civil Procedure 9(a), 12(b)(1), 12(b)(2), 12(b)(6) and 17(b)(2).  Essentially, the City bases its motion on three arguments:  OSGC's alleged failure to state a claim; GBRE's alleged failure to plead subject matter jurisdiction; and Oneida Seven's alleged lack of capacity to sue.

## A.    Failure to State a Claim—Standard of Review Under Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This rule reflects a "liberal notice pleading regime" intended to "focus litigation on the merits of a claim" rather than on "technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  However, even post-*Twombly* and *Iqbal*, the federal pleading standard requires only that a plaintiff provide "'enough detail to . . . show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir.) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)), *cert. denied*, 561 U.S. 1026 (2010).

In ruling on a Rule 12(b)(6) motion to dismiss, the court construes the complaint  in the "light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and

draw[ing] all inferences in [the nonmoving party's] favor." *Bell v. City of Chicago,* 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted).

### B.  Failure to Plead Subject Matter Jurisdiction—Standard of Review Under Rule 12(b)(1).

The standard of review for a Rule 12(b)(1) motion to dismiss depends upon the purpose of the motion. *See Freiburger v. Emery Air Charter,* 795 F. Supp. 253, 256 (N.D. Ill. 1992). If the motion merely challenges the sufficiency of the allegations of subject matter jurisdiction, which is what the City has done here, then the court must accept as true all well-pleaded factual allegations and construe them favorably to the pleader. *Rueth v. U.S. EPA*, 13 F.3d 227, 229 (7th Cir. 1993). However, if the motion denies the truth of the allegations, the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). Dismissal is proper only if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle the plaintiff to the relief requested. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

### C.  Lack of Capacity to Sue—Standard of Review Under Rules 9(a) and 17(b)(2).

Rule 9(a) states that "[e]xcept when required to show that the court has jurisdiction, a pleading need *not* allege . . . a party's capacity to sue or be sued." Fed. R. Civ. P. 9(a)(1) (emphasis added). When a party desires to raise the issue of the capacity of any party to sue or be sued, "a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a)(2).

A determination of legal existence and capacity to sue may involve issues of fact. *See Swaim v. Moltan Co*., 73 F.3d 711, 718 (7th Cir.), *cert. denied*, 517 U.S. 1244 (1996). Contrary to the City's position (*see* Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs'

Complaint ("Def. Mem.") 23, ECF Dkt. No. 10), a determination of capacity to sue is not subject to the same test as personal jurisdiction under Rule 12(b)(2).[1]  Instead, courts have held that if factual issues are germane to the determination of whether a plaintiff has the capacity to sue, a motion to dismiss is not the proper mechanism to resolve the dispute.  *See Europaper B.V. v. Integrated Material Mgmt. Serv., Inc.*, No. 01-211, 2003 WL 21688233, at *1 (N.D. Ill. July 17, 2003) (in considering whether plaintiff lacked capacity to sue, court explained that "it is inappropriate for the Court to consider evidence . . . outside of the pleadings in ruling on a motion to dismiss"); [2] *Tait v. Anderson Banking Co.*, 171 F. Supp. 3, 10 (S.D. Ind. 1959) (denying motion to dismiss based on capacity to sue because it required consideration of facts outside the complaint).  If a movant submits extrinsic facts in support of its lack of capacity to sue argument, the court should convert the motion to dismiss into one for summary judgment. *See e.g.*, *Bradbury Co. v. Teissier-duCros*, 387 F. Supp. 2d 1167, 1177 (D. Kan. 2005) (converting motion to dismiss based on capacity to sue into motion for summary judgment due to factual issues).

A summary judgment ruling on whether Oneida Seven has capacity to sue is premature. Nevertheless, if the Court construes the City's motion to dismiss as a motion for summary judgment, this Court may only grant summary judgment when the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to

---

[1] To the extent that the City purports to rely on Rule 12(b)(2) to support its argument that Oneida Seven lacks capacity to sue, the City makes no attempt to support that argument and the Court should ignore it. *See Goren v. New Vision Int'l,* 156 F.3d 721, 726 n.2 (7th Cir. 1998) (court can ignore and deem waived arguments that are not well-developed).  In any event, a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a *defendant* and not the plaintiff.  *See RNPM, LLC v. Cobas-Mondriguez*, 938 F. Supp. 2d 231, 232-33 (D.P.R. 2013) (motion to dismiss for lack of personal jurisdiction over plaintiff was "unwarranted by the law of personal jurisdiction").  A plaintiff can sue in any court the plaintiff likes, subject to the court having jurisdiction over the subject matter and the defendant.  Rule 12(b)(2) is inapplicable here.

[2] Pursuant to Civil L. R. 7(j)(2), a copy of this and other unpublished opinions cited in this memorandum are attached as exhibits to the accompanying Affidavit of Amber C. Coisman.

judgment as a matter of law. Fed. R. Civ. P. 56(a); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, a court views the record in the light most favorable to the nonmoving party. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

Rule 17(b)(2) states that the "[c]apacity to sue or be sued is determined . . . for a corporation, by the law under which it is organized." Oneida Seven was organized under the laws of the Oneida Nation. (Compl. ¶ 11.) Consequently, Oneida law applies to the determination of whether Oneida Seven has the capacity to sue.

## II. OSGC HAS SUFFICIENTLY PLED CLAIMS FOR PROCEDURAL AND SUBSTANTIVE DUE PROCESS VIOLATIONS.

OSGC alleges claims for violation of procedural due process and substantive due process pursuant to 42 U.S.C. § 1983—the statutory vehicle for bringing federal actions based on constitutional violations. Although the constitutional guarantees of procedural and substantive due process both protect against the arbitrary exercise of government power, and the City blends its response to the two claims in its brief, they are distinct concepts.

Procedural due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner" before the government can deprive a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Substantive due process, on the other hand, bars government behavior that is so arbitrary that it "shocks the conscience"—regardless of the fairness of the procedures used. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 847-50 (1998).

The Complaint alleges that the City held a sham hearing where it arbitrarily revoked the CUP based on a patently false rationale after OSGC had relied on the CUP and invested millions of dollars in the project, and then compounded its wrongdoing by callously ignoring all of

OSGC's subsequent pleas for relief.  The City's outrageous and unfair conduct violated OSGC's right to both procedural and substantive due process.

A.   **OSGC Has Sufficiently Alleged A Constitutionally-Protected Property Interest.**

The City moves to dismiss both due process counts on the basis that OSGC does not allege a constitutionally-protected property interest.  (Def. Mem. 12-15.)  The City's argument is without merit.

The City contends that OSGC has failed to allege a constitutionally-protected interest because OSGC's alleged interests are "all contingent upon the CUP."  (Def. Mem. 12.)  But, of course, this argument ignores that these other interests are precisely why OSGC had a constitutionally-protected property interest.  OSGC acquired much more than just a conditional use permit:  OSGC also obtained a building permit from the City, air permits from state and federal regulators, contracts from third-parties, and various grants and tax-credits.  (Compl. ¶¶ 34-36, 88-89.)  In reliance on all of these property interests, OSGC invested significant funds in the construction and development of the waste-to-energy facility.  When the City revoked the CUP, it rendered this investment and all of OSGC's property interests useless.

Property interests can take many forms, essentially encompassing any "legitimate claim of entitlement."  *Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972).  The combined interests alleged by OSGC are more than sufficient to warrant due process protection.  *See Atkinson v. Piper*, *State ex rel. Buchholz v. Hotel Wis. Realty Co.* and *State ex rel. Klefisch v. Wis. Tel. Co.*, 181 Wis. 519, 532, 195 N.W. 544 (1923) (known as the "Building Height Cases") (finding that defendants had substantial vested property rights where they had obtained a building permit, invested in the project, and development of the project was underway); *Peninsula Props., Inc. v.*

*City of Sturgeon Bay*, No. 04-692, 2006 WL 1308093, at *3 (E.D. Wis. May 8, 2006) (City's interference and delay in issuing building permits sufficient basis for due process claim).

Even cases cited by the City recognize that property rights like OSGC had here are sufficient for purposes of alleging a due process violation. *See, e.g.*, *Polenz v. Parrott,* 883 F.2d 551, 556-57 (7th Cir. 1989) (plaintiff's right of use in property through occupancy permit was a protectable property interest); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165-66 (7th Cir. 1994) (plaintiff had a protectable property interest in land it owned in fee simple). Especially when viewed in the light most favorable to OSGC, the Court should conclude that OSGC has sufficiently alleged that it had a property interest that was subject to the constitutional protections of the Due Process Clause. The Court should deny the City's motion to the extent it argues otherwise.

**B.      OSGC Has Exhausted Its State Law Remedies.**

The City contends that OSGC's procedural and substantive due process claims must be dismissed because OSGC did not "vindicate its rights" in state court. (Def. Mem. 10-12.) Essentially, the City argues that OSGC has failed to exhaust its state court remedies. This argument baffles OSGC, because it does not know what more it possibly could have done.

Although the City apparently recognizes that OSGC filed a request for an administrative appeal, filed a Notice of Claim, filed a certiorari action in state court, and pursued that action all the way to the Wisconsin Supreme Court, the City says that OSGC should have done more. OSGC should have, the City argues, taken the favorable rulings from the state court action and served them upon the City, and then when the City failed to re-issue the CUP, filed yet another state court action asking a circuit court to hold the City in contempt. (Def. Mem. 11.) The City's argument ignores both procedural and practical obstacles.

First, the favorable decision of the Court of Appeals hardly laid clear the path to other remedies for OSGC. With exceptions not applicable here, once a notice of appeal has been filed, the circuit court loses all jurisdiction to act until the record has been remitted. Wis. Stat. § 808.075. The record is not remitted, however, until the time for filing a petition for review has run; moreover, if a petition is timely filed and granted (which happened here), the record is not remitted until the Supreme Court issues its decision. Wis. Stat. § 809.26.

Thus, any notion that OSGC could have obtained an order of contempt from a circuit court compelling reissuance of the CUP before the Supreme Court ruled is just plain wrong. Moreover, even if a circuit court had the jurisdiction to act prior to remand, we respectfully submit that no judge in the state would have done so once the petition to review was filed. And even if OSGC could have found a court to do so, the risk to OSGC or any other party going forward with the project while there was still a possibility of reversal would have been intolerable. That is why OSGC asked the City to voluntarily retract its opposition and re-issue the CUP. (Compl. ¶ 70.) But the City refused to do so, instead petitioning for review despite the Court of Appeals' stinging rebuke.

Once the Supreme Court had issued its decision, the time for reconsideration had expired, and the record was remanded, the circuit court would have recovered jurisdiction. But the "remedy" postulated by the City was hardly available even then. Although OSGC clearly had prevailed, the judgment of the appellate courts did not "require" the City to do anything and, hence, could not be enforced directly against the City. *See* Wis. Stat. § 815.02 (judgment that "requires the performance of any other act" may be served on party "required to obey the same"). Rather, the Wisconsin Court of Appeals simply reversed the circuit court, and then the Wisconsin Supreme Court affirmed the Court of Appeals. (Compl., Ex. A at 21, Ex. B, ¶ 81.)

And that is perfectly consistent with Wisconsin law, which by statute expressly limits the reviewing court's authority in a certiorari proceeding. *See* Wis. Stat. § 68.13(1) ("The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision"). As one Wisconsin court explained: "[A] certiorari court cannot order the [defendant] to perform a certain act." *Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶ 9, 337 Wis. 2d 484, 805 N.W.2d 127, *review denied*, 339 Wis. 2d 737 (2012).

Consequently, even if OSGC had served these rulings on the City and followed up by filing a contempt proceeding, there was nothing that OSGC could have argued the City was in contempt *of*. A contempt finding obviously would have required that the defendant had disobeyed some order or directive from the court. *See* Wis. Stat. § 785.01(1)(b) (defining contempt as intentional "disobedience, resistance or obstruction of the authority, process or order of a court"). Because neither ruling from the Wisconsin appellate courts required the City to do anything, it could not have been held in contempt. *Cf. Hanlon v. Town of Milton*, 2000 WI 61, ¶ 27, 235 Wis. 2d 597, 612 N.W.2d 44 (plaintiff's prior certiorari action did not preclude subsequent Section 1983 claim).

Could OSGC eventually have placed this dispute in a posture in which the City was under an enforceable order to re-issue the CUP? Probably, but for one additional fact: As explained more extensively in subsection II.B, below, by the time the Supreme Court remitted the record to the circuit court (July 16, 2015)—over two years and nine months after the City revoked the CUP without any rational justification—the unique confluence of circumstances that would have allowed construction of the facility had disappeared. (Compl. ¶ 73.) That loss was the direct result of the City's intransigence.

The circumstances here are thus materially different than those that led this Court to dismiss the complaint in *CEnergy-Glenmore Wind Farm # 1, LLC v. Town of Glenmore*, No. 12-C-1166, 2013 WL 3354511 (July 3, 2013), *aff'd*, 769 F.3d 485 (7th Cir. 2014). In *CEnergy-Glenmore*, other than apply for a permit, the plaintiff did almost nothing to pursue its rights under local or state law. Inexplicably, CEnergy waited three years to apply for a building permit after issuance of the CUP. *Id.* at *1. Then, when the City denied the building permit, CEnergy did not seek administrative review from the municipality under a town ordinance, and it did not file suit in state court. *Id.* at *7. The deadline CEnergy missed was a self-imposed contractual deadline that went largely unheeded by CEnergy until the eleventh hour. *Id.* at *2.

In this case, OSGC promptly applied for all necessary permits (including a building permit and air permits) after receiving the CUP. (Compl. ¶¶ 33-39.) When the City revoked the CUP, OSGC promptly sought administrative review from the City. (Compl. ¶ 61.) Had the City acted properly on that appeal and granted OSGC the hearing it deserved, OSGC would have received the relief it needed with more than sufficient time to meet the statutory deadline necessary to complete the project. *See infra*, Part II.B, 14-15. When the City rejected that appeal, OSGC promptly filed an action in state court to try to reverse the revocation, and vindicated its rights all the way to the Wisconsin Supreme Court. (Compl. ¶¶ 61-71.)

The City did not merely delay; it took affirmative steps that it knew would harm OSGC—such as revoking the CUP, using false reasons to do so, denying a fair hearing, and pursing an appeal to the Wisconsin Supreme Court. The City took these actions knowing full well that OSGC had expended significant funds in reliance on the City's prior assurances and permits—actual damages that also make this case materially different than *CEnergy-Glenmore*. Through it all, the City did not just drag its feet for a few months like the Town of Glenmore did

in *CEnergy-Glenmore*; rather, the City affirmatively blocked OSGC's efforts for *over two-and-a-half years*.

OSGC has done more than enough to exhaust its state law remedies. The Court should deny the City's motion to the extent it argues otherwise.

### C. OSGC Has Sufficiently Alleged Its State Law Remedies Were Inadequate.

Although OSGC has plainly exhausted its state law remedies, a separate question exists as to whether OSGC has sufficiently alleged that those remedies were inadequate. The City argues that OSGC has not sufficiently alleged the inadequacy of state law remedies, and contends that "the facts do not support such an inference." (Def. Mem. 6-7.) The City is mistaken, as the facts alleged by OSGC plainly show that its state law remedies were grossly inadequate.

A state law remedy "can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008). OSGC sought an administrative appeal, but the City denied it without a hearing. (Compl. ¶ 61.) OSGC filed a Notice of Claim with the City, which the City ignored. (Compl. ¶ 62.) OSGC filed a certiorari action and, when the Court of Appeals vindicated its contention that the City wrongfully revoked the CUP, asked the City to re-issue it. (Compl. ¶¶ 63, 66, 70.) But the City also ignored this request. When the City decided to appeal to the Wisconsin Supreme Court, OSGC was left with no choice but to defend itself and seek affirmance from that court. (Compl. ¶ 74.)

By the time all of this transpired, through no fault of its own, the grants and other incentives that OSGC had received to construct the facility had expired. (Compl. ¶ 73.) For example, OSGC applied for a grant through a program established by Congress in the American

14

Recovery and Reinvestment Act of 2009 to stimulate new renewable energy projects. *See* American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 1603, 123 Stat. 115, 364-66 (2009) (a so-called "Section 1603 grant"). The 1603 program allowed certain developers to receive up to 30 percent of a project's capital costs in the form of a cash payment. *See* Pub. L. No. 111-5, § 1603(b)(2)(A) (energy facilities defined in § 1603(d)(1) qualify for 30 percent grant); Pub. L. No. 111-5, § 1603(d)(1) (qualifying facilities include facilities identified in 26 U.S.C. § 45(d)(7)); 26 U.S.C. § 45(d)(7) (qualifying facility included a facility "which uses municipal solid waste to produce electricity").

The 1603 grant program, however, was temporary. To take advantage of the program, the facility had to be operational by no later than January 1, 2014. *See* Pub. L. No. 111-5, § 1603(a)(2) ("No grant shall be made . . . with respect to any property unless such property . . . is placed in service after 2010 and before the credit termination date with respect to such property . . . ."); Pub. L. No. 111-5, § 1603(e)(2) (defining "credit termination date" as January 1, 2014 for facilities described in 26 U.S.C. § 45(d)(7)).

As alleged in the Complaint, without this grant and other incentives, the project was no longer viable. (Compl. ¶ 73.) No one factor, however, was dispositive. Even without the Section 1603 grant, OSGC could have sold the opportunity to a third party who may have been eligible for tax credits if the City had promptly responded to OSGC's request to re-issue the CUP. Unfortunately, the City stalled and—this is one point where OSGC actually agrees with the City—"processed [the project] to death" through its appeal to the Wisconsin Supreme Court. (Def. Mem. 1.) At this point, even if the City miraculously changed its mind and re-issued the CUP tomorrow, nobody would proceed with the project.

The City argues that because OSGC won its state court lawsuit, its state law remedy was adequate. (Def. Mem. 8.) But that ignores that the City did not provide adequate notice or a meaningful hearing prior to revoking the CUP—an impermissible due process violation. *See infra*, Part II.D, 16-18. Moreover, the lawsuit did not give OSGC what it sorely needed— namely, timely re-issuance of the CUP and, more importantly, appropriate compensation for the significant damages it suffered as a result of the City's wrongful actions. *See Hanlon*, 2000 WI 61, ¶ 18 (plaintiff cannot bring damages claim in certiorari action). Thus, this case stands in stark contrast to the cases relied upon by the City, where the plaintiff actually received the permit it sought during or as a result of the state court proceeding. *See, e.g., Donohoo v. Hanson*, No. 14-309, 2015 WL 5177968, at *1 (W.D. Wis. Sept. 3, 2015) (plaintiff issued land use permit while certiorari action was pending); *Harding v. Cty. of Door*, 870 F.2d 430, 431 (7th Cir.) (building permit reinstated), *cert. denied*, 493 U.S. 853 (1989); *Minneapolis Auto Parts Co. v. City of Minneapolis*, 572 F. Supp. 389, 393 (D. Minn. 1983) (plaintiffs granted permits in state court proceedings).

Through no fault of its own—and indeed because of the City's wrongful actions—OSGC has never received the relief it deserves. To this day, the CUP remains revoked and the building permits, air permits, grants and other contractual commitments have become useless.[3] OSGC has suffered millions of dollars of damages without proper redress. Respectfully, OSGC requests that the Court allow OSGC's claims to proceed to a trier of fact in federal court.

### D.    OSGC Has Sufficiently Alleged A Procedural Due Process Claim.

To allege a procedural due process violation, OSGC must demonstrate that it was deprived of a constitutionally-protected interest without due process of law. *Easter House v.*

---

[3] Although the inadequacy of state law remedies can readily be inferred from the facts alleged, if it is necessary to plead the word "inadequate" we certainty can, and hereby request leave to do so if the Court deems it necessary.

*Felder*, 910 F.2d 1387, 1396 (7th Cir. 1990), *cert. denied*, 498 U.S. 1067 (1991). The allegations in the Complaint satisfy this standard.

To the extent that the City provided OSGC with a hearing, due process required that hearing to be fair. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Owen v. Lash,* 682 F.2d 648, 652 (7th Cir. 1982) (procedural due process "imposes upon the State a duty to follow a fair process of decision making"). But the hearing provided by the City when it revoked the CUP was anything but fair; to the contrary, it was a kangaroo court that ran roughshod over OSGC's procedural due process rights. (Compl. ¶¶ 54-60.) There were simply no procedural safeguards in place that prevented the Common Council from arbitrarily revoking a lawfully-issued permit for a patently false reason.

What is more, the City should have seen this coming: months before the "hearing" where the Common Council ultimately revoked the CUP, the Common Council directed the Plan Commission to investigate whether the Plan Commission has been misled. (Compl. ¶¶ 43-44.) If the Common Council aimed to revoke the CUP, the City had plenty of opportunity to devise a fair hearing for OSGC. Especially because the City knew that OSGC already had invested significant funds in the project in reliance on a CUP and building permit issued over a year earlier, before revoking the CUP the City could and should have provided notice and a hearing before an impartial decision maker and allowed OSGC to present a defense. *See* Wis. Stat. § 68.11. If the City had taken this simple step, the parties may have avoided the years of litigation that have followed.

The City undoubtedly had the authority to revoke the CUP. The Due Process Clause, however, prevented the City from doing that in a way that was manifestly unfair. Because the City had the authority to revoke the CUP, the City should have devised a manner to consider that

decision that would have prevented a fabricated reason for it. Given the lack of adequate notice and a meaningful hearing before the revocation, any subsequent, post-deprivation procedural remedies that may have been available to OSGC are beside the point. *See Zinermon v. Burch*, 494 U.S. 113, 138 (1990) (when there are no statutory or other procedural safeguards in place to restrict the state actor's authority, a court may conclude that a plaintiff was denied procedural due process without considering the adequacy of post-deprivation procedures).

But the City's procedural failures did not end at the sham "hearing" where the Common Council revoked the CUP. The City's flagrant disregard of procedural due process continued when it summarily denied OSGC's request for administrative review without a hearing (Compl. ¶ 61), even though state law plainly required one. *See* Wis. Stat. § 68.10(1) (when city does not provide hearing that complies with § 68.11 before adverse determination, aggrieved party may appeal and receive such a hearing). Shortly thereafter, OSGC sent a Notice of Claim to the City but the City did not even bother to respond. (Compl. ¶ 62.) Then, when OSGC implored the City to re-issue the CUP after the Court of Appeals found that the City had wrongfully revoked it, the City again ignored OSGC's request—without any hearing or process at all, let alone "due" process. (Compl. ¶ 70.) The callous disregard of OSGC's rights sufficiently pleads a procedural due process violation.

### E.   OSGC Has Sufficiently Alleged A Substantive Due Process Claim.

In attacking the due process claims alleged by OSGC, the City makes little attempt to distinguish between the substantive due process claim and the procedural due process claim. (Def. Mem. 6-15.) For example, the City appears to cite *River Park, Inc. v. City of Highland Park,* 23 F.3d 164 (7th Cir. 1994), to support its arguments that both due process claims should be dismissed (Def. Mem. 6-7), even though that case involved only a procedural due process claim. The distinction is important, of course, because different arguments support each claim.

A substantive due process violation occurs when a municipality exercises its authority in a manner that is "arbitrary, oppressive, or unreasonable" and "shocks the conscience." *Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 426 (7th Cir. 2011). The Seventh Circuit also has characterized municipal land use actions that violate due process as "arbitrary and capricious," or "random and irrational," or "arbitrary to the point of being 'egregious.'" *CEnergy-Glenmore Wind Farm # 1, LLC v. Town of Glenmore,* 769 F.3d 485, 488 (7th Cir. 2014). The City's actions in this case were all of those things—arbitrary, capricious, random, irrational, egregious and, undoubtedly, conscience-shocking.

While the Seventh Circuit has yet to affirm a case finding a substantive due process violation, other courts have recognized that arbitrary and irrational actions by a municipality can sustain such a claim. *See Ecotone Farm, LLC v. Ward*, 639 Fed. App'x 118, 125-126 (3d Cir. 2016) (farm owner sufficiently alleged a claim for violation of substantive due process based on village council members' attempts to thwart development by making unfounded complaints to environmental authorities and requiring unnecessary engineering compliance); *Three Legged Monkey LP v. City of El Paso,* No. 14-CV-260, 2015 WL 12916439, at *9 (W.D. Tex. Jan. 8, 2015) (plaintiff-lessee successfully alleged substantive due process claim based on city's unreasonable and unjustified requests for lessee to comply with city codes, raids on the business and attempts to interfere with lessee's liquor license); *Sloup v. Loeffler,* No. 05-1766, 2008 WL 3978208, at *14 (E.D.N.Y. Aug. 21, 2008) (fact issues precluded summary judgment on substantive due process claim when town knowingly and intentionally took actions against the plaintiff-fisherman to deprive him of his alleged property interest in certain harbor fishing rights); *Peninsula Props., Inc. v. City of Sturgeon Bay*, No. 04-692, 2005 WL 2234000, at *8 (E.D. Wis. Aug. 17, 2005) (city's "refus[al] to act as a means to coerce a citizen to take

unwarranted action . . . . constitute[d] an abuse of authority which does shock the conscience")
(Goodstein, Mag. J.); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 462
(E.D.N.Y. 2002) (town's denial of a special mining permit due to "political pressure from
environmental and conservation groups" constituted an adequately alleged arbitrary state action
sufficient to state a claim for a violation of substantive due process); *Brady v. Town of
Colchester*, 863 F.2d 205, 215 (2d Cir. 1988) (reversing district court's finding of no substantive
due process violation based on town's revocation of a building permit).

The City cites *CEnergy-Glenmore* as controlling authority for its argument that OSGC
has not sufficiently alleged arbitrary conduct by the City. (Def. Mem. 14.) In that case, the town
delayed a decision about the plaintiff's wind farm based on popular opposition to the project.
*See CEnergy-Glenmore*, 769 F.3d at 486-87. Unlike the case here, the plaintiff in *CEnergy-
Glenmore* did not yet have a building permit, did not spend significant funds in reliance on the
town's actions, and there was no indication that the town acted irrationally or illegitimately. To
the contrary, the Seventh Circuit found that the town's delay was both "rational" and
"legitimate." *Id.* at 488.

The conduct OSGC alleges here is altogether on another level of magnitude. OSGC
acknowledges and accepts the oft-repeated admonition that federal courts are not "boards of
zoning appeals." But this Court need not worry that allowing the claims OSGC alleges here to
proceed will result in disappointed property owners flooding the federal courts with misplaced
grievances about their local municipalities. In denying the City's motion, the Court can and
should emphasize the narrow reach of its ruling, based on the extraordinary facts of this case, as
alleged by OSGC:

- The City lured OSGC to start the project in Green Bay, causing OSGC to spend millions of dollars in reliance on the City's approval of necessary permits.

- Over a year later, after OSGC had spent significant funds on the project, the City arbitrarily revoked those approvals based on reasons that were entirely fabricated.

- The rationale was so bad that, in its motion to dismiss, the City does not even attempt to argue that the reasons for the CUP revocation were legitimate.

- In revoking the CUP, the City chose not just any false pretense, but a falsity aimed at denigrating the character and integrity of OSGC and its executives— namely, that they lied to the City in seeking the CUP.

- The Common Council based its fabricated story about OSGC's lies on earlier statements that OSGC allegedly made to the City's Plan Commission, even though the Plan Commission unequivocally found—after a hearing directed by the Common Council for the express purpose of determining whether OSGC lied to the Plan Commission—that OSGC did *not* lie to the Plan Commission.

- The City forged ahead with its revocation despite warnings from both OSGC's attorneys and the City's own attorney that the City had no basis to do so.

- The City provided no meaningful notice to OSGC that it would revoke the CUP; rather, the expressed purpose of both the Plan Commission and the Common Council meetings was to consider whether OSGC lied to the City.

- The Common Council meeting where the City revoked the CUP was a political sideshow that was far from the meaningful hearing by an impartial decision maker that OSGC deserved if the City wanted to pull the rug out from under OSGC after

encouraging the project and issuing the necessary permits over a year earlier, causing OSGC to spend millions of dollars.

- In direct violation of state law, the City refused to provide any hearing at all in response to OSGC's request for an administrative review of the Common Council's arbitrary decision to revoke the CUP.

- The Wisconsin Court of Appeals expressly found that the City's action was arbitrary and wrongful, an opinion affirmed by the Wisconsin Supreme Court.

- After the Court of Appeals issued its stinging rebuke, the City still refused to re-issue the CUP in response to OSGC's request.

Frankly, it is hard to imagine what more the City could have done to shock the conscience. Indeed, given the nature of the City's actions, a fair inference is that the City intentionally sought to harm OSGC. These allegations are far worse than the circumstances involved in the cases cited by the City. *See CEnergy-Glenmore*, 769 F.3d at 488 (town's actions were "rational" and "legitimate"); *Harding*, 870 F.2d at 432 (municipality "rendered a reasoned decision based on a perfectly logical interpretation of the relevant zoning ordinance"); *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 704 (7th Cir. 1998) (city's decision to deny building permit was "neither arbitrary nor unreasonable"); *Coniston Corp. v Vill. of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988) (village's decision was at worst "mistaken" but not irrational). In contrast, the City's actions against OSGC were outrageously arbitrary and unreasonable.

If the City is not held accountable for its feckless and disgraceful conduct, this will embolden Green Bay and other municipalities to take completely arbitrary actions in reversing their prior decisions without fear of reprisal. Developers across the State of Wisconsin would live in fear that their validly-issued permits might be revoked months or years after their issuance

without consequence to the municipality, but with enormous financial consequence to the developer. The dilemma for developers would be a choice between two undesirable alternatives—either bow to the municipality's unreasonable demands, or pursue an appeal in state court knowing that the municipality could drag the appeal out for years hoping that the project might be dead by the time the appeal is complete.

Federal courts should not be boards of zoning appeal. But in appropriate circumstances, the federal courts stand as a bastion of justice in the face of outrageous government conduct. Respectfully, OSGC urges that this is one of those times. In its Complaint, OSGC has alleged sufficient facts such that a jury should decide whether they merit relief. The Court should allow OSGC's substantive due process claim to proceed.

## III. THE COMPLAINT PLEADS SUFFICIENT FACTS TO ALLEGE CLAIMS ON BEHALF OF GBRE.

In its motion, the City contends that the Complaint does not allege sufficient facts to plead a claim on behalf of GBRE, or to confer subject matter jurisdiction upon it. (Def. Mem. 16, 18.) As the City merely challenges the sufficiency of the allegations as to GBRE, this Court must accept as true all well-pleaded factual allegations and construe them favorably to the pleader. *Rueth v. U.S. EPA*, 13 F.3d 227, 229 (7th Cir. 1993).

There are sufficient allegations in the Complaint to demonstrate that GBRE has pled claims for relief and that this Court has subject matter jurisdiction over those claims. As alleged in the Complaint, GBRE is a "wholly-owned indirect subsidiary of Oneida Seven Generations Corporation, *formed for the purpose of developing the facility*." (Compl. ¶ 12.) (emphasis added). That is, Oneida Seven formed GBRE for the express purpose of pursuing the project that is the entire basis of this lawsuit. Consequently, as the City is well aware, Oneida Seven *and* GBRE were both named plaintiffs in the state court proceedings. (Compl., Exs. A and B.)

In the introductory paragraph of the Complaint, plaintiffs explain that Oneida Seven and its subsidiary, GBRE, will be collectively referred to as "OSGC" throughout the Complaint. (Compl. at 1.) As such, all of the allegations in the Complaint referring to "OSGC" also refer to GBRE. When the Complaint alleges that the substantive and procedural due process rights of "OSGC" were violated by the City and damages resulted therefrom, these allegations are set forth on behalf of Oneida Seven *and* GBRE. (Compl. ¶¶ 85-96.) To the extent that the City wishes to determine how Oneida Seven and GBRE allocated duties between them for the project, the City will have ample opportunity through discovery to learn those facts.

## IV. ONEIDA SEVEN HAS THE CAPACITY TO SUE THE CITY OF GREEN BAY.

The City devotes a significant portion of its motion and accompanying filings arguing that Oneida Seven does not have the capacity to sue the City. (Def. Mem. 18-25; Declaration of Gregg J. Gunta in Support of Defendant's Motion to Dismiss the Complaint for Lack of Capacity to Sue, ECF Dkt. No. 11; Declaration of Leah Sue Dodge in Support of Defendant's Motion to Dismiss the Complaint for Lack of Capacity to Sue, ECF Dkt. No. 12.)

In support of its argument, the City submitted numerous extrinsic materials, which the Court need not consider. Based on the face of the Complaint alone, Oneida Seven and GBRE have the capacity to sue the City in this action: The Complaint was filed by Oneida Seven and GBRE. Oneida Seven and GBRE allege claims against the City in the Complaint. Counsel signed the Complaint and averred that they represent both Oneida Seven and GBRE. The Court need not inquire further. *See Europaper B.V. v. Integrated Material Mgmt. Serv., Inc.*, No. 01-211, 2003 WL 21688233, at *2 (N.D. Ill. July 17, 2003) (denying motion to dismiss based on corporate plaintiff's lack of capacity to sue because corporation filed complaint and alleged claims against the defendant).

If the Court does consider facts outside the Complaint to resolve this issue, the Court should convert this portion of the City's motion to a motion for summary judgment. *See, e.g., Bradbury Co. v. Teissier-duCros*, 387 F. Supp. 2d 1167, 1177 (D. Kan. 2005). Although a motion for summary judgment on this issue is premature, should the Court consider the extrinsic material submitted by the City, Oneida Seven itself has submitted additional materials that unequivocally demonstrate its capacity to sue or, at the very least, show that there are genuine issues of material fact that preclude summary judgment in favor of the City.

In deciding this issue, the Court's authority is limited. Rule 17(b)(2) states that the "[c]apacity to sue or be sued is determined . . . for a corporation, by the law under which it is organized." Fed. R. Civ. P. 17(b)(2). Oneida Seven was formed under Oneida law and thus, Oneida law applies to determine whether Oneida Seven has the capacity to sue. (Compl. ¶ 11.)

State and federal courts must defer to tribal courts on matters of tribal law. Within the tribal judicial system, a tribe's own interpretation of its actions is binding. *See, e.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) ("A federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts"); *Cty. of Charles Mix v. U.S. DOI*, 674 F.3d 898, 903 (8th Cir. 2012) ("Our precedent make clear that the '[j]urisdiction to resolve internal tribal disputes, interpret tribal constitutions and laws, and issue tribal membership determinations lies with Indian tribes and not in the district courts.'"); *cf. Cayuga Nation v. Tanner*, 824 F.3d 321, 330 (2d Cir. 2016) (reversing district court's dismissal for lack of standing to sue, ruling that Bureau of Indian Affairs determination that individual was authorized to act on behalf of the tribe was dispositive).

The City points to various actions by the Oneida General Tribal Council and the Oneida Business Committee over the past three years aimed at the eventual dissolution of Oneida Seven,

claiming that these actions prevent Oneida Seven from bringing this lawsuit. None of those actions were intended to limit the corporation's ability to engage in activities relating to the dissolution, including the pursuit of all claims. Indeed, the authority to pursue claims is implicit in the dissolution process. As a more fundamental matter, however, the Oneida Nation—and the Oneida Nation alone—is the only authority that can interpret whether its tribally-chartered corporation can bring this lawsuit. *LaPlante*, 480 U.S. at 16; *Charles Mix*, 674 F.3d at 903.

To that end, it bears noting that this lawsuit was filed as the natural continuation of a legal strategy long acknowledged by the Oneida Nation and its Business Committee to seek all relief available from the City for its wrongful actions relating to the waste-to-energy facility. That strategy began over four years ago, well before there was any talk about dissolving Oneida Seven, when OSGC asserted its legal rights by filing a certiorari action to challenge the City's pretextual actions that denigrated OSGC, its executives and, indeed, the Oneida Nation.

That should be the end of the matter. Lest there be any doubt, however, the Business Committee recently passed a resolution to remove all ambiguity. *See* Business Committee Resolution No. 02-22-17-E (attached as Exhibit A to the accompanying Aff. of Lisa Summers ("Summers Aff.")). As that resolution makes clear, the various pronouncements cited by the City relating to the ongoing efforts to dissolve Oneida Seven have absolutely no bearing on the ability of Oneida Seven to maintain this lawsuit. To the contrary, the Business Committee always has recognized this lawsuit as a critical part of winding down the affairs of Oneida Seven in a business-like manner and in a way that will not harm the Oneida Nation financially. (Summers Aff. ¶¶ 7-8.)

The Oneida Business Committee's interpretation of its authority is reasonable and, more to the point, binding. Under Oneida Nation law, the Business Committee exercises all of the

powers of the Oneida General Tribal Council, subject to General Tribal Council review, including the power over the Nation's business organizations. (Summers Aff. ¶ 3.) No federal or state court can substitute its own interpretation of Oneida law for the interpretation adopted by the Business Committee exercising its delegated authority under the Oneida Constitution. In sum, both because the Oneida Nation has expressly authorized this lawsuit and this Court may not determine otherwise, the Court should reject the City's attempt to dismiss the case based on Oneida Seven's capacity to sue.

## CONCLUSION

The allegations set forth in OSGC's Complaint are sufficient to withstand the City's motion to dismiss. OSGC has sufficiently alleged claims for violation of procedural and substantive due process. GBRE sufficiently states claims for relief and establishes subject matter jurisdiction. Finally, Oneida Seven has sufficiently alleged facts to demonstrate it has the capacity to sue the City. For these reasons, this Court should deny the City's motion to dismiss and allow this case to be decided by the trier of fact.

Dated this 28th day of February, 2017.

*s/ Eric J. Wilson*
Eric J. Wilson (State Bar No. 1047241)
Amber C. Coisman (State Bar No. 1102371)
Godfrey & Kahn, S.C.
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone: (920) 432-9300
Fax: (920) 436-7988
ewilson@gklaw.com
acoisman@gklaw.com

*Attorneys for Plaintiffs*
*Oneida Seven Generations Corporation and*
*Green Bay Renewable Energy, LLC*

16825180.8